# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS A. OLSON, ) | |
| ) | Case No. 18-cv-3660 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| MARKET SQUARE HOSPITALITY, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas A. Olson ("Olson") filed this commercial mortgage foreclosure lawsuit in Illinois state court against several defendants, including the United States Small Business Administration ("SBA"), after which the United States removed this lawsuit under 28 U.S.C. § 2410 due to the SBA's lien on the real property at issue. Olson has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), which, at this juncture, only pertains to his claims against the SBA. In response, the SBA argues that the Court should deny Olson's motion to the extent it seeks to foreclose Olson's lien free of the SBA's lien. For the following reasons, the Court grants Olson's motion.

**Background**

The following facts are undisputed unless otherwise noted. Defendant Market Square Hospitality, LLC ("Market Square") obtained loans from the SBA and third-party lender St. Charles Bank & Trust Company (the "Bank") to finance Zion Market Square Inn & Suites in Zion, Illinois (the "Property"). In particular, the Bank loaned $6,762,500 to Market Square on August 1, 2012 (the "Bank Loan"). The Bank Loan was part of the SBA's 504 Loan Program, which provides long-term fixed asset financing whereby Certified Development Companies ("CDCs") work on behalf of the SBA with lenders to provide small business financing. The Bank Loan is evidenced by a promissory

note, which is secured by a mortgage on the Property. The Bank's mortgage was recorded in the real property records of the Recorder of Deeds of Lake County, Illinois, on September 12, 2012.

Also in August 2012, the SBA, through the CDC Lake County Partnership for Economic Development, Inc. ("Lake County Partnership"), provided a loan under the SBA's 504 Loan Program to Market Square in the principal amount of $3,197,000 ("SBA Loan"). Market Square signed a promissory note stating that Market Square promised to pay the sum of $3,197,000 to the Lake County Partnership. The Lake County Partnership and the Bank signed a third-party lender agreement on August 24, 2012, in relation to the SBA note. For purposes of this third-party lender agreement, the Lake County Partnership was acting on behalf of the SBA. Thereafter, the Lake County Partnership assigned the third-party lender agreement to the SBA. Also, the Lake County Partnership recorded the SBA's mortgage with the Lake County Recorder of Deeds on September 7, 2012. The SBA Loan matures on October 1, 2032.

During the same time period, Olson and the Bank entered into a loan purchase agreement dated August 1, 2012, which sale closed on June 27, 2017. Pursuant to this agreement, Olson purchased the Bank Loan, including the loan and security agreement, note, mortgage, and all related documents, instruments, and agreements. Olson and the Bank entered into another contract—a certificate of deposit pledge agreement in the amount of $6.8 million—which was the collateral for Olson's obligations under the loan agreement.

Market Square defaulted on the Bank Loan in March 2017, and the Bank exercised its right to accelerate its note and made the amounts owed immediately due and payable.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a);

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**Discussion**

At issue is whether Olson's lien on the Property is superior to the SBA's lien. The parties do not dispute that Illinois law governs this mortgage foreclosure lawsuit. *See Auto-Owners Ins. Co., v. Webslov Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflicts of laws unless the parties disagree on which state's law applies."). In construing contracts under Illinois law, "the primary objective is to give effect to the intention of the parties." *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, 870 F.3d 682, 689–90 (7th Cir. 2017). Accordingly, if "words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Soarus L.L.C. v. Bolson Materials Int'l Corp.*, 905 F.3d 1009, 1011 (7th Cir. 2018) (quotation omitted). "If the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent." *Right Field Rooftops, LLC*, 870 F.3d at 690.

In his summary judgment motion, Olson argues that the SBA agreed to subordinate its mortgage to the Bank's mortgage in the August 24, 2012 third-party lender agreement between the Bank and the Lake County Partnership (acting on behalf of the SBA). The SBA does not dispute that the third-party lender agreement subordinates its mortgage. Instead, the SBA asserts that the

3

Bank breached the third-party lender agreement rendering the agreement unenforceable. *See Assaf v. Trinity Med. Ctr.*, 696 F.3d 681, 685–86 (7th Cir. 2012) ("Illinois forbids a party in material breach of a contract from taking advantage of terms in that contract benefitting him."). As such, the SBA maintains that because Illinois is a first-in-time, first-in-right mortgage recording state, *see* 765 ILCS 5/30, and that the Lake County Partnership recorded the SBA's lien before Olson's lien was recorded, the Court should deny Olson's motion for summary judgment to the extent it seeks to foreclose Olson's lien untethered to the SBA's lien.

The SBA contends that the Bank breached the third-party lender agreement because it conditioned its loan to Market Square on Olson agreeing to maintain $6.8 million in a certificate of deposit as collateral for Olson's obligations under his loan purchase agreement with the Bank. By doing so, the SBA asserts that the Bank gave itself a preference beyond its right as a senior lender without the SBA's prior written consent as required under 13 C.F.R. §§ 120.10, 120.925. In essence, the SBA surmises that the certificate of deposit ensured that the Bank would have zero risk if Market Square defaulted on the Bank Loan, and thus the Bank gave itself a superior preference. The SBA does not cite any legal authority to support its novel theory that Olson's certificate of deposit, which was collateral in relation to his purchase of the Bank's Loan, provided the Bank with preferred position over the SBA. Based on the plain language of the certificate of deposit pledge agreement, the Court would be hard-pressed to conclude that the certificate of deposit—which Olson granted to the Bank to induce it to enter into the loan purchase agreement—gave the Bank a preference over the SBA with respect to repayment of the Bank Loan from the borrower Market Square. (R. 52-1, Ex. 7, Ex. F, Certificate of Deposit Pledge Agreement, ¶ 5(a)).

Furthermore, the SBA's argument ignores the undisputed fact that the Lake County Partnership was the 504 Loan Program CDC acting on behalf of the SBA when it entered into the

4

third-party lender agreement subordinating the SBA's loan. And, there is abundant, undisputed evidence in the record that the Lake County Partnership was aware of the $6.8 million certificate of deposit and approved Olson's loan purchase agreement before it was executed.

Nevertheless, the SBA attempts to create genuine disputes of material fact by providing the affidavit of Gary Wamhof, a Supervisory Loan Specialist at the SBA district office in Fresno, California. Although Wamhof avers that he is familiar with the SBA loan file in this case, he does not assert that he was involved in the transactions at issue or that he spoke with anyone who was, such as representatives from the Lake County Partnership, which acted on behalf of the SBA. *See* Fed. R. Civ. P. 56(c)(4) (affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). For example, Wamhof avers that the SBA did not become aware of Olson's loan purchase agreement and certificate of deposit pledge until 2017. Wamhof, however, does not explain how he can speak on behalf of the entire SBA in making this averment nor does he point to any concrete facts upon which a reasonable inference can be made to support his conclusion. *See Bordelon v. Board of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016) ("[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment.") (citation omitted).

Further, Wamhof offers unsubstantiated and impermissible opinions—even though the SBA did not designate him as an expert under Rule 26(a)(2). *See, e.g., United States v. Z Inv. Props., LLC*, 921 F.3d 696, 699 (7th Cir. 2019). Wamhof also provides improper legal conclusions in his affidavit. *See id.*; *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017). He states, for instance, "[t]he way St. Charles Bank & Trust structured the TPL [third-party lender] Loan violates the collateral requirements of the SBA 504 Program." Wamhof further posits, "[t]he Certificate of Deposit

5

Pledge Agreement and Loan Purchase Agreement between Thomas Olson and St. Charles Bank & Trust constitute a preference as defined in 13 C.F.R. § 120.10 in favor of St. Charles Bank & Trust." Wamhof's legal conclusions—and assertions about the transactions that are outside of his personal knowledge—do not create a triable issue of fact. *See, e.g., Packer v. Trustees of Indiana Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015).

In the end, much of Wamhof's affidavit amounts to speculation due to the lack of foundation or his lack of personal knowledge, and it is well settled that "speculation is not enough to create a genuine issue of fact for the purposes of summary judgment." *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017).

**Conclusion**

Based on the foregoing, the Court grants plaintiff's summary judgment motion. [50] The Court denies plaintiff's June 12, 2019, motion to provide a supplemental proposed foreclosure order as moot. [80]. Plaintiff must provide an updated supplemental proposed foreclosure order by no later than September 12, 2019.

IT IS SO ORDERED.
Date: 8/28/2019           Entered: _____
                                        SHARON JOHNSON COLEMAN
                                        United States District Court Judge

6